UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CLAUDIA GARCIA,
    Plaintiff,

v.

ISS FACILITY SERVICES, INC., et al.,
    Defendants.

Case No. 19-cv-07807-RS

**ORDER DENYING MOTION FOR CLASS CERTIFICATION**

## I. INTRODUCTION

Plaintiff Claudia Garcia brought this action on behalf of herself and similarly situated employees of defendants ISS Facility Services, Inc., ISS Facility Services California, Inc., and Broadridge Financial Solutions, Inc., alleging various violations of wage and hours laws. She now moves for class certification. Because Garcia has not satisfied several of the requirements for certification, the motion will be denied.

## II. BACKGROUND

Defendant ISS Facility Services, Inc. is a "leading international facilities maintenance and staffing company" with nearly 400,000 employees worldwide. Defendant ISS Facility Services California, Inc. appears to be the California subsidiary through which it acts in this state—Garcia refers to the entities collectively as "ISS." Garcia was employed by ISS as a "janitor and custodial detailer" from approximately May of 2018 to August of 2019.

Garcia was assigned to work at a facility owned and operated by defendant Broadridge in El Dorado Hills. Broadridge was a client of ISS, who contracted with it to provide janitorial services. Garcia alleges ISS and Broadridge were her "joint employers," and the complaint alleges its claims for relief against both of them.

Garcia's claims fall into four categories:

1) Garcia alleges she and other employees were underpaid because of "rounding"—*i.e.*, instead of paying employees for the actual time that they were clocked in, ISS allegedly rounded employee time up or down to the nearest quarter hour interval. For reasons not explained, instances of rounding up and rounding down did not tend to offset, with the result that Garcia allegedly was underpaid every single pay period, by an average of 4.7 hours. Garcia asserts the rounding practice resulted in both minimum wage violations and overtime pay violations.

2) Garcia states she and other employees were not compensated for time spent before their shifts clearing security and walking to their work area. Again, Garcia contends this resulted in both minimum wage and overtime violations.

3) Garcia contends she and other employees were not provided the required meal and rest breaks, particularly because they were not permitted to leave the premises during rest breaks, and therefore remained "under the control" of the employer.

4) Garcia asserts the wage statements she and other employees received failed to satisfy the requirements of Labor Code 226 because they did not show the total hours worked during each pay period.

Based on those underlying claims, Garcia also advances what she calls "derivative claims" for failure to pay final wages, failure to furnish accurate itemized wage statements, and unfair and unlawful business practices.

## III. LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which represents more than a mere pleading standard. To obtain class certification, plaintiffs bear the

burden of showing they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Rule 23(a) provides that a court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four Rule 23(a) prerequisites are satisfied, a court must also find that plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Relevant here is Rule 23(b)(3), which permits certification if a court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These requirements are often referred to as predominance and superiority. The class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Dukes*, 131 S. Ct. at 2551).

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

IV. DISCUSSION

As noted above, several different aspects of Garcia's showing in support of class certification are problematic or insufficient.

1. *Proposed classes*

Garcia first proposes simply certifying a class of "All current and former non-exempt employees of Defendants ISS Facility Services, Inc. and ISS Facility Services California, Inc. ("Defendants") in California at any time during the period from October 24, 2015 through the date of class certification ("Class Period")." The first problem with this proposal is that it leaves uncertain the status of defendant Broadridge, which is alleged to be "joint employer" with ISS at Broadridge's El Dorado facility, but not at any other locations where ISS provides staffing in California. Second, as will be discussed further below, Garcia has not otherwise shown that she can pursue the alleged claims on behalf of employees at facilities other than Broadridge.

Third, as Garcia appears to recognize in her alternative proposal to create several different classes and subclasses, defining a class of "all current and former non-exempt employees" presupposes that all the employees were subject to all four of the alleged categories of violations. While nothing in theory precludes Garcia from so alleging, it is unclear whether she is prepared to take on the burden of making such a showing.

Garcia's alternative proposal for separate classes and subclasses, however, is also flawed. She suggests the following definitions:

> 1. Minimum Wage Class: all persons employed by Defendants as non-exempt employees in California during the Class Period.
>
>> a. Rounding Subclass: all persons employed by Defendants as non-exempt employees in California during the Class Period who were not paid by Defendants based on employee clock in and clock out times.
>>
>> b. Off-the-clock Subclass: all persons employed by Defendants as non-exempt employees in California during the Class Period.

      2. <u>Overtime Class</u>: all persons employed by Defendants as non-exempt employees in California during the Class Period who worked at least one shift over eight hours long.

          a. <u>Rounding Subclass</u>: all persons employed by Defendants as non-exempt employees in   California during the Class Period who were not paid by Defendants based on employee clock in and clock out times, and worked one shift over eight hours long.

          b. <u>Off-the-clock Subclass</u>: all persons employed by Defendants as non-exempt employees in California during the Class Period who worked at least one shift over eight hours long.

      3. <u>Rest Break Class</u>: all persons employed by Defendants as non-exempt employees in California during the Class Period who worked at least one shift over 3.5 hours long.

      4. <u>Meal Period Class</u>: all persons employed by Defendants as non-exempt employees in California during the Class Period who worked at least one shift over five hours long.

          a. <u>First Meal Break Subclass</u>: all persons employed by Defendants as non-exempt employees in California during the Class Period who worked at least one shift over five hours long.

          b. <u>Second Meal Period Subclass</u>: all persons employed by Defendants as non-exempt employees at Defendants' California facilities during the Class Period who worked at least one shift over ten hours long.

      5. <u>Wage Statement Class</u>: all persons employed by Defendants as non-exempt employees in California during the Class Period.

As evident, the proposed 1(b) and 2(b) subclass definitions are identical to the definitions for the primary classes (1) and (2), respectively. Likewise, 4(a) is identical to the primary class (4). Class (5) is titled differently, but its definition is otherwise identical to the definition for primary class (1). The resulting ambiguity and lack of clarity is not tenable.

    2. *Geographic scope*

As part of its attack on Garcia's showing as to "numerosity," ISS argues that the claims must be limited to the Broadridge facility where Garcia worked. While ISS is correct that Broadridge is not even potentially liable as a "joint employer" for what happens at facilities of *other* ISS clients, Garcia is not arguing to the contrary. As noted above, it is not entirely clear how Garcia believes her class certification motion applies to Broadridge. She may  believe that a class can be certified as to all ISS locations in California, but then Broadridge would only be jointly

liable with respect to those class members who worked at its facility. Whether or not such a structure might be viable, Garcia likely is correct that she is not precluded from bringing a class action applicable to all of ISS's locations merely because she has also named Broadridge as a defendant.

That said, Garcia has not made a sufficient showing that the commonality and predominance requirements can be satisfied with a class extending to all of ISS's client workplaces. Although she provides declarations from two ISS employees who worked at other locations and who complain generally about missed meal and rest breaks, and rounding, the record contains far too little information to infer that sufficient commonalities exist among the various ISS client workplaces to support a state-wide class.

Garcia argues classes have been certified for all of a janitorial staffing service's client sites in two other cases. In *Castro v. ABM Indus., Inc*., 325 F.R.D. 332, 334 (N.D. Cal. 2018)), however, the claims involved a company-wide policy requiring personal cell phone use without reimbursement. In *ABM Indus. Overtime Cases*, 19 Cal. App. 5th 277, 284, 308-309 (2017), the plaintiff presented a plethora of evidence from hundreds of employees at the various sites. There is no similar basis here for concluding or even inferring that the relevant conditions are the same across the various workplaces where ISS provides janitorial staff in California.

As just one example, ISS asserts that the security procedures at Broadridge are unique and therefore more time consuming, a proposition Garcia has not rebutted. Accordingly, at least on the present record, Garcia cannot establish a class extending beyond the Broadridge site is appropriate.

3. *Numerosity*

If the class is limited to employees at Broadridge, Garcia faces a potential numerosity issue. It appears fewer than 40 ISS employees worked at Broadridge during the relevant time

period.[1] While that would likely be just enough to meet the numerosity requirement, ISS insists virtually all of those employees were subject to binding arbitration agreements, and therefore are ineligible to be class members.

As Garcia's individual case shows, however, it also is possible that many or even most of the employees who originally were subject to arbitration agreements may have later signed superseding mediation agreements, without a mandatory arbitration provision. The burden of establishing numerosity lies with Garcia. In the event she brings a renewed motion for class certification, she should make an affirmative showing as to the number of potential class members who are not subject to binding arbitration provisions.

4.  *Predominance of common issues*

As discussed, Garcia has not adequately shown there are common issues that predominate to support a state-wide class. As to the possibility of a class limited to the Broadridge site, ISS insists its written employment policies are legally compliant, and therefore the existence of any legal violations would turn on individualized issues, including how, if, and why each employee missed breaks, when employees actually started and stopped working, how different supervisors may have acted, and the like. Class certification, however, is not uncommon in wage and hours cases similar to this one, notwithstanding such arguments from defendants. Among other things, defendants often argue the record shows there was no class-wide policy, without due recognition that the existence or non-existence of a policy may itself be a certifiable question subject to common proof.

Garcia contends she can prove her claims on a class basis here through the common proof of an analysis of payroll and time keeping records. Indeed, it is theoretically possible that some type of statistical analysis could be performed to establish a pattern and practice of violations notwithstanding the written policies. Beyond repeatedly asserting that it can be done, however,

---

[1] The contract between Broadridge and ISS terminated at the end of July 2021.

Garcia has provided little information as to what actual "common proof" she proposes to use at trial to answer any of the common questions. Garcia has provided an expert declaration from a certified financial planner and consultant who has reviewed and analyzed Garcia's own payroll and time records to calculate how much she allegedly has been underpaid. That, however, at most shows how liability could be established one class member at a time, not how common proof could be used to answer common questions on a class-wide basis. Accordingly, the motion for class certification must be denied.[2]

## V.  CONCLUSION

Garcia's motion for class certification and her motion to strike ISS's declarations offered in opposition are denied.

**IT IS SO ORDERED**.

Dated: November 22, 2022

_____
RICHARD SEEBORG
Chief United States District Judge

---

[2] Garcia's motion to strike the declarations offered by ISS, primarily on grounds that she had not taken depositions of the declarants, is denied. The conclusions drawn above, however, do not turn on disputed factual assertions made in any of those declarations.