1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9

10   CLAUDIA GARCIA,                                  Case No. 19-cv-07807-RS

11                     Plaintiff,

12          v.                                         **ORDER GRANTING IN PART AND
                                                       DENYING IN PART RENEWED
13   ISS FACILITY SERVICES, INC., et al.,             MOTION FOR CLASS
                                                       CERTIFICATION**
14                     Defendants.

15

16                                      I. INTRODUCTION

17          Plaintiff Claudia Garcia brought this action on behalf of herself and similarly situated

18   employees of defendants ISS Facility Services, Inc. and ISS Facility Services California, Inc.

19   alleging various violations of wage and hours laws. Garcia's prior motion for class certification

20   was denied for several reasons. She now renews her motion, contending her current showing is

21   adequate to support certification of a class that includes all ISS employees throughout California.

22   Garcia, however, has failed to establish that conditions at all the locations where ISS employees

23   work are sufficiently similar to support class treatment of the claims she advances. Garcia has,

24   however, made an adequate showing to support class certification as to the employees at the

25   particular worksite where she was employed, although a potentially fatal numerosity issue will

26   remain. The motion will be granted in part, and denied in part.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

## II. BACKGROUND

Defendant ISS Facility Services, Inc. is a "leading international facilities maintenance and staffing company" with nearly 400,000 employees worldwide. Defendant ISS Facility Services California, Inc. appears to be the California subsidiary through which it acts in this state—Garcia refers to the entities collectively as "ISS." Garcia was employed by ISS as a "janitor and custodial detailer" from approximately May of 2018 to August of 2019.

Garcia was assigned to work at a facility in El Dorado Hills owned and operated by Broadridge Financial Solutions, Inc., which is also named as a defendant herein. Broadridge was a client of ISS, who contracted with it to provide janitorial services. Garcia alleges ISS and Broadridge were her "joint employers." While the complaint alleges its claims for relief against both ISS and Broadridge, and the initial motion for class certification appeared to be directed at both, Garcia has clarified that the present motion does not seek certification of any claims against Broadridge.

Although Garcia did not amend her complaint following the prior order denying class certification, her renewed motion for class certification focuses on somewhat different clams than did the prior motion, and appears to abandon some entirely.[1] Garcia's present claims fall into four main categories:

1) Garcia alleges she and other employees were not consistently allowed to take their full meal breaks, or meal breaks at all, and that they did not receive the requisite additional compensation when that occurred.

2) Garcia contends she and other employees were not provided their required rest breaks, particularly because they were not permitted to leave the premises during those breaks, and therefore remained "under the control" of the employer.

---

[1] ISS does not argue that any of the claims advanced in the current motion are outside the scope of the complaint. Nor does ISS take issue with the wording of any of Garcia's proposed class definitions. This certification order is without prejudice to any subsequent reconsideration of the language of the class definitions, particularly if the matter ultimately is to be presented to a jury.

1    3) Garcia states she and other employees were not compensated for time spent before their

2    shifts clearing security and walking to their work area.

3    4) Garcia asserts she and other employees were not appropriately reimbursed for use of

4    their privately owned cell phones, which she contends were necessary given the job conditions.

5    Based on those underlying claims, Garcia also advances what she calls "derivative claims"

6    for failure to pay final wages, failure to furnish accurate itemized wage statements, and unfair and

7    unlawful business practices.

8

9                                    III. LEGAL STANDARD

10   Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which

11   represents more than a mere pleading standard. To obtain class certification, plaintiffs bear the

12   burden of showing they have met each of the four requirements of Rule 23(a) and at least one

13   subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by*

14   273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate

15   . . . compliance with the Rule." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

16   Rule 23(a) provides that a court may certify a class only if: "(1) the class is so numerous

17   that joinder of all members is impracticable; (2) there are questions of law or fact common to the

18   class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

19   of the class; and (4) the representative parties will fairly and adequately protect the interests of the

20   class." These requirements are commonly referred to as numerosity, commonality, typicality, and

21   adequacy. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

22   If all four Rule 23(a) prerequisites are satisfied, a court must also find that plaintiffs

23   "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast*

24   *Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Relevant here is Rule 23(b)(3), which permits

25   certification if a court finds that "questions of law or fact common to class members predominate

26   over any questions affecting only individual members, and that a class action is superior to other

27   available methods for fairly and efficiently adjudicating the controversy." These requirements are

28

often referred to as predominance and superiority. The class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Dukes*, 131 S. Ct. at 2551).

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

IV. DISCUSSION

A. <u>Numerosity</u>

The order denying the prior motion for class certification noted ISS's contention that virtually all of its employees executed written agreements to address any employment disputes with ISS through binding arbitration. As the parties are aware, Garcia herself executed such an agreement, but through earlier motion practice it has been determined that she may proceed with this case because she and ISS subsequently executed an agreement to mediate disputes, which superseded the agreement to arbitrate and which does not preclude this litigation.

The prior order denying certification noted that because Garcia has the burden of establishing numerosity, she would be expected to make an affirmative showing as to the number of potential class members who are not subject to binding arbitration provisions in any renewed certification motion. Garcia's renewed motion argued that in discovery ISS produced only four signed arbitration agreements from among over 2100 members of the putative class, statewide. Garcia faulted ISS for alleged discovery intransigence to explain why she did not have a clearer picture as to how many potential class members were subject to arbitration agreements. ISS, in turn, claimed Garcia had failed to pursue the case with reasonable diligence following denial of the first certification motion.

Pointing out that the existence of arbitration agreements is an affirmative defense as to which ISS bears the burden, Garcia contended she had satisfied her obligation to establish

CASE NO. 19-cv-07807-RS

1   numerosity. Although ISS does bear the burden to establish the defense, it appeared judicial

2   efficiency would be better served to resolve this threshold question before reaching other

3   questions of certification. Accordingly, ISS was ordered to submit declarations sufficient to

4   establish (1) the total number of its employees at the potentially relevant jobsites in the putative

5   class period, and (2) the number of those employees that ISS contends signed binding arbitration

6   agreements, and who did not subsequently sign mediation agreements like that signed by Garcia.

7   Dkt. No. 123.

8          After seeking an extension of time to respond, ISS submitted a declaration that failed to

9   comply with the order and omitted the most critical information. ISS provided the number of

10  employees in the places identified by the order, as well as the number who were party to

11  arbitration agreements.[2] ISS, however, provided no information as to how many of its employees,

12  like Garcia, may have executed mediation agreements that supplanted prior arbitration

13  agreements.[3] At this juncture, therefore, Garcia has met her burden to establish numerosity, and

14  ISS has failed to show its affirmative defense will apply to enough ISS employees to defeat

15  numerosity.[4]

---

[2] For the first time, ISS raises a contention that some of its employees are subject to an arbitration requirement under the terms of applicable collective bargaining agreements. ISS has not provided sufficient evidence to evaluate whether any such collective bargaining agreements preclude employees from participating in a class action such as this. Because ISS does not contend a collective bargaining agreement applied to the El Dorado Hills site, and that is the only site as to which certification is being granted, it is not necessary to reach that issue.

[3] Why ISS chose to omit this information is unclear. Paragraph 9 of the declaration ISS submitted expressly states the number "of those employees that ISS contends signed binding arbitration agreements, and who did not subsequently sign mediation agreements like that signed by Garcia," had been ascertained and would be provided. The remainder of the declaration, however, fails to include that promised data. Dkt. No. 126.

[4] That said, while Garcia has won the battle on this point, she may still lose the war. Because the class is being limited to the El Dorado Hills site, the class size is just barely over the minimum necessary to warrant class treatment, even assuming virtually all class members are not bound by the arbitration agreements most of them signed. Should ISS seek to decertify the class for insufficient numerosity, it will have the burden finally to put to rest the question of how many superseding mediation agreements were executed.

B. <u>Geographic scope</u>

The order denying Garcia's first motion for class certification observed that she had not made a sufficient showing that conditions were sufficiently similar across the various worksites where ISS provides contracted janitorial services to warrant certification of a state-wide class. Garcia's renewed motion makes no more robust a showing, relying on the same conclusory and vague declarations previously found to be inadequate. Garcia complains that ISS resisted discovery, but it was incumbent on her to pursue the information she would need to establish predominance and commonality across all sites where she sought certification.

With her response to ISS's identification of the number of employees who signed arbitration agreements, Garcia filed a handful of additional declarations from ISS employees at other sites. Those declarations, submitted without seeking leave, are similarly too general and conclusory to support certification of a state-wide class. *Cf. ABM Indus. Overtime Cases*, 19 Cal. App. 5th 277, 284, 308-309 (2017) (certification across all of a janitorial staffing service's client sites proper where the plaintiff presented a plethora of evidence from hundreds of employees at the various locations.)[5]

C. <u>El Dorado Hills</u>

As the order on the prior motion for class certification observed, the number of employees at the El Dorado Hills site, just under 40, is sufficient to qualify for class treatment assuming relatively few of them are subject to arbitration agreements. ISS has now shown that up to 27 of them may have executed arbitration agreements. If few of those executed superseding mediation agreements, the class size may drop below the minimum necessary to maintain this litigation as a

---

[5] ISS objects that the additional declarations all come from employees who signed arbitration agreements, and it seeks leave to file a "sur-reply" to establish that fact. Because the question still is not merely whether an employee signed an arbitration agreement, but whether he or she also signed a superseding mediation agreement, the motion for leave to file a sur-reply is denied. Additionally, even assuming the declarants could not participate in the class, that would not necessarily render their testimony regarding jobsite conditions irrelevant or otherwise inadmissible. Nevertheless, the declarations are insufficient.

1    class action. At this point, however, numerosity is satisfied.

2          The denial of the prior certification motion was based on Garcia's failure to establish

3    commonality and predominance, including specifically by showing how any common questions

4    could be resolved on a class-wide basis through common proof. Largely by changing the focus of

5    her claims, Garcia has now adequately addressed that shortcoming.

6

7          1. *Meal breaks*

8          The claims upon which Garcia seeks certification allege violations of California Labor

9    Code §§ 226.7 and 512. California Labor Code § 512(a) requires employers to provide employees

10   with one 30-minute meal period, to begin no later than the end of the fifth hour of work, and

11   another 30-minute meal period to begin no later than the tenth hour of work, for shifts of that

12   length or longer. If the employer does not provide a compliant meal period, the employer must pay

13   an additional hour of compensation at the regular rate of compensation. Cal. Lab. Code § 226.7(c).

14   "An employer is liable only if it does not provide an employee with the opportunity to take a

15   compliant meal period. The employer is not liable if the employee chooses to take a short or

16   delayed meal period or no meal period at all." *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 78

17   (2021) (citing *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040-41 (2012)).

18         In *Donohue*, the California Supreme Court explained that "an employer's assertion that an

19   employee waived a meal period 'is not an element that a plaintiff must disprove as part of the

20   plaintiff's case-in-chief.'" 11 Cal. 5th at 75 (quoting *Brinker*, 53 Cal. 4th at 1053 (Werdegar, J.,

21   concurring)). "Instead, the assertion is an affirmative defense, and the burden is on the employer,

22   as the party asserting waiver, to plead and prove it." *Id.* at 75-76 (internal quotation marks

23   omitted). The California Supreme Court explained that its choice to create a presumption was a

24   practical one "deriv[ed] from an employer's duty to maintain accurate records of meal periods."

25   *Id.* at 76. The court wished to prevent employers from receiving a "potential windfall from the

26   failure to record meal periods." *Id.* at 75. As the presumption is a rebuttable one, a defendant may

27   contest it by "presenting evidence that employees were compensated for noncompliant meal

28

United States District Court
Northern District of California

periods or that they had in fact been provided compliant meal periods during which they chose to work" via "[r]epresentative testimony, surveys, [] statistical analysis, [and] other types of evidence[.]" *Id.* at 77 (internal quotation marks and citation omitted).

ISS's challenge to certification regarding missed, or shortened meal breaks fails given the *Donahue* presumption. Garcia has shown that meal breaks frequently were not accurately recorded in ISS records, and that ISS instead applied an "auto-deduct" policy, charging employees with a thirty-minute meal break when none had been recorded. That shifts the burden to ISS to prove employees were in fact provided compliant meal breaks, or compensated appropriately if they were not. While ISS insist it has "ample evidence showing employees were provided the opportunity and were expected to take compliant meal periods," it has not presented any of the "representative testimony surveys, statistical analysis" or other similar evidence necessary to rebut the *Donahue* presumption.

2. *Rest breaks*

Garcia contends ISS employees at the El Dorado Hills site were not provided legally compliant rest periods because they were not allowed to leave the premises, which she argues is inconsistent with the rule that "during rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time." *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 269 (2017). The legality of ISS's policy of requiring employees to remain on site during their rest breaks is plainly a question that can be answered on a class-wide basis.

3. *Security checks*

Garcia contends employees were wrongfully denied compensation for the time they necessarily expended clearing security checks upon arrival for work. Again, the legality of that policy can be addressed on a class-wide basis, even if damages vary or are minimal.

United States District Court
Northern District of California

4. *Cell phone expenses*

Garcia has presented little evidence that ISS employees at the El Dorado Hills site were required to use their personal cell phones in the performance of their job duties. Whether they in fact were required to do so, however, and whether that gives rise to a right for reimbursement of incurred expenses, are questions that can be resolved, one way or the other, on a class-wide basis.

## V.  CONCLUSION

Garcia has made an adequate showing that class certification is warranted for the classes she proposes, limited to ISS employees at the El Dorado Hills facility operated by Broadridge. While her diligence in pursuing discovery raises some concerns, she has also shown that she and her counsel will adequately represent the class.

In the event ISS intends to seek decertification on grounds of inadequate numerosity, it must demonstrate that the arbitration agreements on which it relies were not superseded by mediation agreements. Any such decertification motion should be brought within the next 60 days. A further case management conference will be held on January 9, 2025, with a joint case management conference due one week in advance.

**IT IS SO ORDERED**.


Dated: September 30, 2024

_____
RICHARD SEEBORG
Chief United States District Judge